No. 26-20015

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee.
v.
KAMAIGA GHOLAR,
Defendant-Appellant

Appeal from the United States District Court for the Southern District of Texas

# BRIEF FOR DEFENDANT-APPELLANT

THOMAS S. BERG
Moreno Gracia & Berg
4306 Yoakum Blvd., Suite 240
Houston, TX 77006
713-502-9596
tom@mgblawyers.com

ATTORNEY FOR DEFENDANT-APPELLANT

# CERTIFICATE OF INTERESTED PERSONS
**United States v. Kamaiga Gholar**
**No. 26-20015**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. The Honorable Lee Rosenthal, Senior United States District Judge, Houston Division, Southern District of Texas.

2. Kamaiga Gholar, Defendant-Appellant.

3. United States of America, Plaintiff-Appellee.

4. John G.E. Marck, Acting United States Attorney, Michael Edward Day, Jay Hileman, Stephanie Bauman, and Carmen Castillo Mitchell, Assistant United States Attorneys for the Southern District of Texas.

5. Thomas S. Berg, counsel for appellant (CJA) on appeal and in the district court.

These representations are made in order that the judges of this court may evaluate disqualification or recusal.

/s/ Thomas S. Berg
THOMAS S. BERG

## STATEMENT RESPECTING ORAL ARGUMENT

Ms. Gholar requests oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS .......... i

STATEMENT RESPECTING ORAL ARGUMENT .......... ii

TABLE OF CONTENTS .......... iii

TABLE OF CITATIONS .......... iv

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUE .......... 2

STATEMENT OF THE CASE .......... 3

SUMMARY OF THE ARGUMENT .......... 7

ARGUMENT .......... 8

ISSUE RESTATED: The evidence is insufficient to prove an interstate nexus at the time of the offense.

CONCLUSION .......... 12

CERTIFICATE OF SERVICE .......... 14

CERTIFICATE OF COMPLIANCE .......... 15

# TABLE OF CITATIONS

Page

## CASES

*Kousisis v. United States*
605 U.S. ___ (2025), 145 S.Ct. 1382(2025)………………………………... 10

*Perira v. United States*
347 U.S. 1 (1954) ..……………..…………………………………………… 9

*Schmuck v. United States*
489 U.S. 705 (1989)........................................................................................9

*Smith v. Ayres*
845 F2d 1360 (5th Cir. 1988)……………………………………………11

*United States v. Biyiklioglu*
652 Fed.Appx. 274 (5th Cir. 2016) ……………………………………11

*United States v. Garcia*
135 F.3d 951 (5th Cir.1998) ........................................................................8

*United States v. Hoffman*
901 F.3d 523 (5th Cir.2018) ......................................................................10

*United States v. Izydore*
167 F.3d 213 (5th Cir. 1999) .....................................................................11

*United States v. Kieffer*
681 F.3d 1143 (10th Cir. 2012) …………………………………………12

*United States v.* Kuhrt
788 F.3d 403 (5th Cir. 2015) ……………………………………………11

*United States v. Rosas-Fuentes*
970 F.2d 1379 (5th Cir.1992) .....................................................................8

STATUTES AND RULES

18 U.S.C.§ 1343 ...…..………………………………………...………..*passim*

21 U.S.C.§ 1349…………………......…………………………………..... *passim*

28 U.S.C. § 1291 ……………………………………………….………………1

TEX. OCC. CODE ANN. § 1704.202(d)(3)………………………………………9

## STATEMENT OF JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas, Houston Division.

## STATEMENT OF THE ISSUE

ISSUE: Is the evidence sufficient to prove an interstate nexus at the time of the offense?

## STATEMENT OF THE CASE

Kamaiga Gholar pleaded not guilty to conspiracy to commit wire fraud and substantive wire fraud in connection with helping to make a bail bond for a defendant in state court. She waived a jury and, with the agreement of the government, submitted the case for trial by the district judge. After a week-long bench trial, the district court found her guilty of both counts. The district court, finding that the offense occasioned no loss intended or otherwise, sentenced Ms. Gholar to time served, no fine, and no term of supervised release. The government moved to remit the special assessments. ROA. 422, 1473-74. This timely appeal on the merits followed. ROA. 418.

On July 16, 2024, the Grand Jury in the Houston Division of the Southern District of Texas charged the Defendant-Appellant, Kamaiga Gholar (Ms. Gholar) along with fifty-two co-defendants in an unwieldy 48-count indictment. ROA. 28, *et seq*.[1] Ms. Gholar was charged in count nine (along with eight other co-defendants) with a conspiracy from September 2021 through January 2022 to commit wire fraud, 18 U.S.C. §§ 1343 and 1349. She was charged alone in count 14 with one substantive count of wire fraud alleged to have occurred on January 18, 2022. 18 U.S.C. § 1343.

---

[1] The record in this appeal is indicated "ROA. [page number]."

On August 2, 2024, Ms. Gholar entered a not guilty plea to counts 9 and 14. The government secured a superseding indictment on May 8, 2025, which did not change the charges against Ms. Gholar. ROA. 174. Counsel reentered her not guilty pleas to the superseding counts 9 and 14 on May 21, 2025. ROA. 201, 204.

Most of the defendants, including Ms. Gholar, joined in motions to dismiss the indictment for failure to state an offense. ROA. 217. The district court consolidated these motions and denied them in a written order on June 20, 2025, holding that the indictment adequately alleged a federal offense. ROA. 218. Thereafter the defendants self-sorted into those who wanted a bench trial, those who wanted a jury trial, and those who wanted to plead guilty and avoid trial. Ultimately Ms. Gholar, along with co-defendants James Bateson and Katherine O'Brien, waived a jury and proceeded to a bench trial. ROA. 277, *et seq*.

In the fall of 2021, Nichola Yoder found himself in the Harris County Jail and unable to make bond. Due to the nature of his offenses and his history, there were multiple bonds amounts totaling $335,000. ROA. 551-556, 613, 916. Mr. Yoder reached out to Mary Brown, a go-to at AABLE Bonding Company in Houston, to see what it would take to get out. During those jail calls, Ms. Brown suggested gathering a group of co-signers who collectively could cover the surety amounts of the bonds to guarantee his appearance in court. ROA. 935-38. Among

those who Mr. Yoder touched was Ms. Gholar who naively agreed to help. ROA. 939-40.

Ms. Gholar, who was gainfully employed, went to AABLE to complete paperwork to qualify for service as a co-signer. But when she presented her valid pay stubs she was told by a representative that they were insufficient. ROA. 963. She also was conscripted to recruit other co-signors, but AABLE would dummy up some fake pay stubs for them and falsify parts of their co-signor applications. Enough co-signors were found to get Mr. Yoder's bond approved by AABLE. Once Mr. Yoder was released on bond, he made his court appearances and resolved his cases, i.e., there was no bond forfeiture for failure to appear. ROA. 1120

On January 18, 2022, several weeks later, AABLE uploaded copies of the bonding documents to a company called Bond-Pro in Georgia which served as a back-up repository for the documents. ROA. 805. The originals were maintained in AABLE's offices in Houston until they were seized by the FBI. ROA. 1118-19.[2]

Unknown to all, local law enforcement and the FBI had become suspicious about AABLE because it made high bonds for people suspected of gang

---

[2] The insurance company lawyer, Ken Good, acknowledged this. "Q Okay. But they, in fact, did have paper files here in Houston. It's just that the FBI got them first? A Well, they did have both, yes, sir."

associations during a gang war around Houston. ROA. 598-99, 912. By listening to jail calls between the purported gang members and Mary Brown of AABLE, the investigation discerned that AABLE was coordinating a fraudulent scheme to make and accept fabricated documents to meet the insurance requirements of the bonding company. ROA. 600-604, 912.[3] Ultimately this led to the indictments of employees of AABLE, criminal defendants like Mr. Yoder who sought release on high bonds, and a plethora of friends and family members who got caught up following the instructions of the bonding company on how to complete the dicey co-signor paperwork. ROA. 605-606. Everything was local except for the occasional internet uploads by AABLE employees to its paperwork repository company. ROA. 607-608.

Ms. Gholar filed notice of appeal to this Court on January 7, 2026. ROA. 418.

---

[3] The FBI investigation triggered an audit by the insurance company, but it found that the irregularities did not affect failure to appear rates or bond forfeitures. "That was the first thing that we looked at after the FBI visited their office, whether they -- the allegation was that they were posting bonds to help people escape and get away from their criminal charges, and that was the first thing we looked at. . . and we concluded that was not true. Q That was not true. They were doing something else, but they were not helping people escape or avoid court? A Yeah. They couldn't have done that without having huge forfeiture losses, and that would have shown themselves -- shown itself really quickly." Testimony of Ken Good, attorney for Financial Casualty Insurance Company, ROA. 1121.

## SUMMARY OF THE ARGUMENT

Ms. Gholar challenges the sufficiency of the evidence particularly in the use of interstate wire communications in furtherance of the scheme to defraud. The claimed interstate wire transfer of documents from the bonding company to an out of state document repository occurred with no connection to the alleged fraud and happened at a time well-removed from the offense. The alleged fraud, local and obviously intrastate, was completed when the co-defendant, Nicholas Yoder, secured his release on the bail bond in Harris County. Since proof of the interstate nexus set forth in 18 U.S.C § 1343 is "an immutable requirement;" *i.e.*, "a constitutional limitation on congressional power over intrastate activities," the case against Ms. Gholar fails and acquittals should be entered.

# ARGUMENT

ISSUE RESTATED: The evidence is insufficient to prove an interstate nexus at the time of the offense.

## A. Standard of Review.

Ms. Gholar brings a sufficiency of the evidence challenge to her convictions. The standard of review for the finding of guilt at a bench trial is whether the conviction is supported by substantial evidence. *United States v. Garcia*, 135 F.3d 951, 955 (5th Cir.1998). In applying this substantial evidence test, the Court must consider the evidence in the light most favorable to the government. *United States v. Rosas–Fuentes*, 970 F.2d 1379, 1381 (5th Cir.1992).

## B. Does the record support the district court's conclusion that Ms. Gholar transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing for the purposes of executing such scheme?

Well, no. During the cross-examination of FBI Special Agent Adam Hassan, the government's case agent, he provided the dates of October 1, 2021 to December 26, 2021, those being the inclusive dates of the machinations between Mr. Yoder, AABLE Bonding, and the various co-signers, including Ms. Gholar, to effect his release on bond. ROA. 961-62. He candidly admitted that the date the relevant bonding papers were uploaded to Bond-Pro, the repository company, was January 18, 2022, a date after the conspiracy was completed (but not interstate,

*ergo* federal). ROA. 962. When counsel put it point blank to Agent Hassan that the upload took place after the dates he described for the conspiracy, he said, "I believe so." ROA. 962.

In a similar vein, the corporate representative for Bond-Pro, Nora Mendoza, admitted that the date of January 18, 2022, was just "when we received the file." ROA. 805-06, but did not reflect when bonds actually were made or anything else. The original AABLE bond papers, the ones required by state law to be retained, were at the bonding company offices in Houston. ROA. 1118-19.

The district court found that:

Interstate wires were used to upload the documents for Nicholas Yoder's bond application to a server in Georgia that is maintained by Bond-Pro, a file-management company for bond companies such as Aable. (9/30 Tr. at 2–10 (Mendoza); id. at 135–36 (Hassan); 10/1 Tr. at 39 (Good); see Gov. Ex. 40; Gov. Ex. 41 (demonstrative)). Gholar could have reasonably foreseen this use of the wires. The cosigner documents that she prepared and submitted to Aable are documents that Aable and Financial Casualty required to issue a bail bond. The first paragraph of the cosigner applications explains that the documents Gholar submitted provided for legal recourse against cosigners in the event the bond is forfeited. (Gov. Ex. 26 at 3, Gov. Ex. 27 at 3; Gov. Ex. 28 at 3). Gholar could have reasonably foreseen that Aable would electronically store these documents in online servers for future use. Indeed, state law requires Aable to maintain these cosigner applications for four years. (9/29 Tr. at 79 (Kern); 10/1 Tr. at 60 (Good)); see also TEX. OCC. CODE ANN. § 1704.202(d)(3). The use of the wires was "incident to an essential part of the scheme" to defraud. *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)). 4 The evidence shows that Gholar used wires in several ways as part of her wire-fraud scheme. She sent the cosigner applications via electronic mail to Aable bonds, and she sent money via Cash App in exchange for the fake pay stubs in

> those applications. (See Gov. Exs. 36, 37). The government, however, did not introduce evidence that these wire transmissions were interstate. Cf. United States v. Hoffman, 901 F.3d 523, 546 (5th Cir. 2018) ("The jury heard direct testimony that Yahoo emails had to leave the state."). 5 The court relies on cases about the mail-fraud statutes because the Supreme Court construes the mailfraud and wire-fraud statutes together. *Kousisis*, 145 S. Ct. at 1390 n.2. 15 Case 4:24-cr-00371 Document 1476 Filed on 10/15/25 in TXSD Page 16 of 37 First, the cosigner applications and contracts were essential to obtaining Financial Casualty's guarantee of the bond amounts. Without the ability to store the cosigner documents for future use, Financial Casualty would have no recourse to recover the $335,000 it would owe Harris County if Yoder failed to appear. (10/1 Tr. at 40–41, 67–69 (Good)). Financial Casualty also would not possess information, such as information about the cosigners' or defendants' families, that would enable it to recover if the bond was forfeited. (Id. at 32–33, 38–39, 50–51, 54–55 (Good)). Second, Aable's contracts with Financial Casualty required Aable to maintain the bond documents for five years, a year longer than state law requires. (Id. at 48, 60 (Good)). Aable's uploading of the cosigner documents to Bond-Pro's Georgia server was the means of, and therefore "incident" to, maintaining the bond records, which was "an essential part" of the scheme to defraud.

ROA. 357-58. But the district did not discuss how this was relevant and essential to the fraud itself, which was completed weeks before the duplicates of the bond paper data were transmitted to Bond-Pro.

These documents could have been uploaded months or even years later. The fact of the uploads was not intrinsic to the scheme. It is fantastical to suggest that that the subsequent offsite duplication of data storage was foreseeable to Ms. Gholar and her participation in a completely local scheme back in December 2021 when the offending parties were finagling the bonds. The district court's struggle to make the interstate transmission substantial and relevant echoes the

government's effort to make this parochial, intraurban scam into a federal crime.

This Court recognized that the interstate nexus operated as a limitation upon rather than a license for the expansion of federal authority to regulate even noxious local behavior. *United States v. Izydore*, 167 F.3d 213, 219 (5th Cir.1999) ("[T]he communication at issue must satisfy the interstate nexus set forth in § 1343; it is an immutable requirement.") (reversing wire fraud conviction based on intrastate telephone calls and noting that the interstate nexus requirement is not a substantive element of wire fraud but arises from **constitutional limitations** (emphasis added) on congressional power over intrastate activities. *See United States v. Biyiklioglu*, 652 Fed.Appx. 274 (5th Cir. 2016) "To prove wire fraud, the government must prove: (1) a scheme to defraud; (2) the use of, or causing the use of, wire communications **in furtherance of the scheme**; and (3) a specific intent to defraud." *United States v. Kuhrt*, 788 F.3d 403, 413–14 (5th Cir.2015), *cert. denied*, ––– U.S. ––––, 136 S.Ct. 1376, 194 L.Ed.2d 360 (2016). A conviction under § 1343 "requires that the wire communication cross state lines." *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir.1988) (explaining that where **relevant** telephone calls were all intrastate, there was no act that could have constituted wire fraud).

The use of the Internet alone is also insufficient to establish the required

interstate nexus. *See United States v. Kieffer*, 681 F.3d 1143, 1155 (10th Cir.2012) ("[O]ne individual's use of the internet, 'standing alone,' does not establish an interstate transmission ... because the origin and host servers, whether one and the same or separate, might be located in the same state as the computer used to access the website.").

In sum, the belated and inconsequential storage of duplicate data in an off-site storage facility in Georgia did not convert this seedy bail bond scheme into the kind of federal crime authorized to be prosecuted under § 1343. Perhaps one can understand the government's frustration that a time-consuming investigation meant to uncover gangster bond-jumpers did not pan out. As the Financial Casualty audit found, it simply was not true. But the government, after all the work it did, instead of restraint, took the interstate nexus limitation for a license to fix a non-federal problem. It does not support the unnecessary disenfranchisement of 53 citizens, mostly poor and of color. It does call for this Court to impose restraint where, as here, there is not substantial, relevant evidence to support the convictions.

## CONCLUSION

For these reasons, Ms. Gholar respectfully requests that this Court vacate her convictions and sentence and enter a judgment of acquittal

Respectfully submitted,

/S/ Thomas S. Berg
THOMAS S. BERG
4306 Yoakum Blvd., Suite 240
Houston, TX 77006
713-502-9596
tom@mgblawyers.com

CERTIFICATE OF SERVICE

I, THOMAS S. BERG, certify that today, May 12, 2026, a copy of the brief for appellant, a copy of the record excerpts, and an electronic copy of the official record in this case, were served upon Assistant United States Attorney Carmen Castillo Mitchell, by electronic case filing and by e-mail per prior agreement of the parties.

/S/ Thomas S. Berg
THOMAS S. BERG

CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 3148 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3. This brief complies with 5TH CIR. R. 31.1 because it has been converted into Portable Document File (PDF) format.

/S/ Thomas S. Berg
THOMAS S. BERG